UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DENNIS M. DONOVAN )
 )
              Plaintiff, )
 )
     v. )    Civil Action No. 04-12110-MLW
 )
 )
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY )
AND POPEO, P.C., ROBERT M. GAULT, )
individually, and PETER J. MARATHAS, JR., )
individually, )
 )
             Defendants. )

## DEFENDANTS' OPPOSITION TO RAYTHEON COMPANY'S EMERGENCY MOTION TO IMPOUND CONFIDENTIAL DOCUMENTS

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Robert M. Gault and Peter J. Marathas, Jr. (collectively "the defendants") oppose the Emergency Motion to Impound Confidential Documents (the "Motion to Impound") filed by Raytheon Company ("Raytheon"). Raytheon seeks to impound five documents relating to plaintiff Dennis Donovan's ("Donovan") former employment with Raytheon.

Donovan has sued the defendants for legal malpractice. The defendants moved to dismiss Donovan's Complaint on October 26, 2004. At that time the defendants filed as exhibits to their Memorandum in Support of Defendants' Motion to Dismiss the five documents that are the object of Raytheon's Motion to Impound. Those documents are a 1998 employment agreement between Donovan and Raytheon ("Employment Agreement"); a 1998 severance agreement between Donovan and Raytheon ("Severance Agreement"); a first amendment to the Employment Agreement ("First Amendment"); a second amendment to the Employment

Agreement ("Second Amendment"); and a 2001 letter agreement ("Letter Agreement") between defendant Gault (who then represented Donovan) and Raytheon's General Counsel regarding Donovan's resignation and Donovan's entitlement to benefits under the amended Employment and Severance Agreements.

The defendants oppose Raytheon's Motion to Impound for three reasons. First, none of the documents is confidential. The Employment Agreement, the First Amendment and the Second Amendment are public records. They are part of a 2002 federal court action between Raytheon and Donovan, and they have been publicly available for almost two and a half years. The Severance Agreement merely describes whether Donovan would receive the salary, bonus and benefits in the Employment Agreement when his employment with Raytheon terminated. And the Letter Agreement simply provides that Donovan would receive health and life insurance, and a pension, notwithstanding Donovan providing Raytheon less than 30 days' notice of his resignation. Second, the settlement agreement between Raytheon and Donovan – upon which Raytheon bases its claim of confidentiality – does not provide that these documents shall be kept confidential. And third, Raytheon has failed to identify any compelling or good reason to impound the documents, or the specific, severe harm that would result from the documents not being impounded.

## BACKGROUND FACTS

Donovan was employed by Raytheon as Senior Vice President of Human Resources between October, 1998 and March, 2001. At the time Donovan was hired, Donovan and Raytheon entered into the Employment Agreement and the Severance Agreement.[1] Exs. 1, 2. The Employment Agreement detailed Donovan's salary, hiring bonus, annual bonus and other

---

[1] For the convenience of the Court, the defendants have attached each of the five documents to this memorandum. But as before, to lessen the likelihood that the documents will be accessed or disseminated prior to the Court ruling on Raytheon's Motion to Impound, the defendants have not filed the documents electronically.

terms of Donovan's employment. Ex. 1. The Severance Agreement did not contain any such details. Instead, it simply described whether Donovan would or would not receive his "Annual Salary," "Annual Bonuses," "vacation pay," and the benefits "required under any employment agreement" should Donovan terminate from Raytheon voluntarily or involuntarily. Ex. 2, ¶¶ 6-8.

Shortly after Donovan began working at Raytheon the parties executed the First Amendment. Ex. 3. The First Amendment merely corrected some drafting and typographical errors in the Employment and Severance Agreements. *Id.* In January, 2000, the parties also entered into the Second Amendment. Ex. 4. The Second Amendment enhanced the amount of stock, and the pension and life insurance, Raytheon provided to Donovan. *Id.* The Second Amendment also provided that Donovan would not be required to repay the hiring bonus under any circumstances. *Id.*

Donovan resigned from Raytheon in March, 2001. In conjunction with Donovan's resignation, defendant Gault (who was then Donovan's attorney) and Raytheon's General Counsel signed the Letter Agreement. Ex. 5. In relevant part, the Letter Agreement stated that even though Donovan provided Raytheon less than 30 days' notice of his resignation, Raytheon would provide Donovan with his "post employment entitlements," including health insurance, life insurance and pension. *Id.*

On May 1, 2002, more than a year after Donovan resigned, Raytheon sued Donovan in Middlesex County Superior Court in Massachusetts to prevent Donovan from receiving the benefits under the Second Amendment. Donovan removed Raytheon's lawsuit to this Court on May 17, 2002, where it was assigned Civil Action No. 02-10909-MLW.

On May 21, 2002, four days after the case was removed, Donovan publicly filed with this Court a Motion to Compel Arbitration and to Stay Court Proceedings Pending Arbitration.

Donovan attached to his motion the Employment Agreement, the First Amendment and the Second Amendment. Exs. 1, 3, 4. When Raytheon submitted its opposition to Donovan's Motion to Compel Arbitration on June 4, 2002, *Raytheon itself* attached to its memorandum and publicly filed Donovan's Employment Agreement and the Second Amendment. Exs. 1, 4. Thus, the Employment Agreement, the First Amendment and the Second Amendment have been part of the public record for almost two and a half years.

## DISCUSSION

I.  RAYTHEON'S MOTION SHOULD BE DENIED BECAUSE THE FIVE DOCUMENTS ARE NOT CONFIDENTIAL AND BECAUSE RAYTHEON HAS NOT PROVIDED A COMPELLING REASON TO IMPOUND THEM OR IDENTIFIED THE SPECIFIC, SEVERE HARM THAT WOULD RESULT IF THE DOCUMENTS ARE NOT IMPOUNDED.

It is well established that documents filed with the Court in the course of litigation and judicial records are presumed to be open to the public. *See Nixon v. Warner Communications, Inc.* 435 U.S. 589 (1978); *Federal Trade Commission v. Standard Financial Mgmt. Corp., et al.*, 830 F.2d 404, 412-13 (1st Cir. 1987). Only the "most compelling reasons can justify non-disclosure of judicial records." *Standard Financial Mgmt.*, 830 F.2d at 410 (quoting *In re Knoxville News-Sentinal Co.*, 723 F.2d 470, 478 (6th Cir. 1983)). Impoundment is justified only after a demonstration of "specific, severe harm" which will result from the disclosure of information to the public. *See Standard Financial Mgmt.*, 830 F.2d at 412 (citing *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986) ("a finding of good cause [to impound documents] must be based on a particular factual demonstration of potential harm, not on conclusory statements"); *Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982) ("a naked conclusory statement [of feared harm] falls woefully short of the kind of showing which raises even an arguable issue" as to impoundment)).

For documents not yet publicly available from the Court, a party must, under Rule 26(c), show good cause in order for them to be impounded and the harm that will occur if they are not sealed. To the extent relevant here, good cause under Rule 26(c) requires Raytheon to demonstrate that the documents contain "confidential . . . commercial information."

The Employment Agreement, First Amendment and Second Amendment were filed publicly with the Court as part of the May, 2002, lawsuit between Raytheon and Donovan. Since that time those three documents have been part of the public record in the clerk's office. Raytheon, therefore, is required to provide a compelling reason to impound them and the specific, severe harm that will result if the documents are not impounded.

In its Motion to Impound, however, Raytheon has not provided a compelling reason to seal the documents. This is because no compelling reason exists. By publicly filing the Employment Agreement, the First Amendment and the Second Amendment with the Court in 2002, Raytheon and Donovan admitted *sub silentio* that those documents did not contain confidential information. Moreover, never once during the intervening two and a half years did Raytheon or Donovan allege the documents were confidential or request the Court to seal the documents retroactively. Thus, there is no compelling reason why at this late stage the Employment Agreement, the First Amendment and the Second Amendment should be impounded.

Further, as the Court itself can see, neither the Severance Agreement nor the Letter Agreement contains confidential commercial information. The Severance Agreement describes only whether Donovan would receive his "annual salary," "annual bonus" and unspecified benefits if he terminated voluntarily or involuntarily. Ex. 2, ¶¶ 6-8. And the Letter Agreement merely states that notwithstanding Donovan providing Raytheon less than 30 days' notice of his

resignation, Donovan would receive the health insurance, pension, life insurance and other benefits in the amended Employment Agreement. Ex 5.

Raytheon asserts that the documents should be impounded because they "are covered by the confidentiality requirements" of a settlement agreement between Raytheon and Donovan (the "Raytheon-Donovan Settlement Agreement") entered into on March 11, 2004. Motion to Impound, p. 1. Following the service of a subpoena by the defendants and the parties executing a protective order, Raytheon provided the defendants with a copy of the Raytheon-Donovan Settlement Agreement on October 27, 2004, the day after Raytheon filed its Motion to Impound. The defendants sought, and Raytheon agreed to provide, the Raytheon-Donovan Settlement Agreement so the defendants could determine whether Raytheon's request for impoundment was supported by the terms of that document. It is not. While paragraph 9 of the Raytheon-Donovan Settlement Agreement does provide that "The parties to this Agreement agree that they will maintain the terms of this Agreement in confidence," it does not provide that any of the five documents at issue here is or shall be confidential. Nor could it, since Raytheon and Donovan cannot suddenly transform non-confidential documents into confidential documents simply by agreement. This is especially true where the rights of the defendants are directly affected by those documents. For the reasons explained in the memorandum the defendants filed in support of their Motion to Dismiss Donovan's Complaint, all five documents help prove that Donovan's legal malpractice claims against the defendants are baseless.

Raytheon alternatively argues that impoundment is justified because Raytheon "does not disclose employment terms internally (to other employees), except on a need to know basis, or externally, except as mandated by law." Motion to Impound, pp. 1-2. Raytheon ignores the fact that Donovan's Employment Agreement, the First Amendment and the Second Amendment have

been available to the public, including Raytheon employees, for nearly two and a half years. Also, Raytheon does not contend – presumably because it cannot contend – that Donovan was prohibited from disclosing the terms of his employment to others while he was employed at Raytheon or thereafter. Further, aside from a generic reference in the Letter Agreement to Donovan's insurance and pension, neither the Severance Agreement nor the Letter Agreement discuss Donovan's salary, the level of benefits he was to receive or any other employment condition of any significance. Raytheon's stated explanation for impoundment, therefore, does not rise to the level of good cause, much less constitute "a most compelling reason."

Finally, Raytheon has failed to identify what specific, severe harm would result from any of the five documents being disclosed. Indeed, no harm is alleged to have resulted from the Employment Agreement, the First Amendment and the Second Amendment being available to the public for more than two years. Against that backdrop, it seems highly improbable that any harm will occur from the Severance Agreement or the Letter Agreement – each of which contain less-detailed information than the other three documents – being disclosed now.

For these reasons, Raytheon's Motion to Impound should be denied.

Respectfully submitted,

MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C., *et al.*,

By their attorneys,

_____
Robert S. Frank, Jr. (BBO No. 177240)
Kevin P. Light (BBO No. 300110)
Paul D. Popeo (BBO No. 567727)
CHOATE, HALL & STEWART
Exchange Place, 53 State Street
Boston, MA 02109
(617) 248-5000

I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED UPON THE ATTORNEY OF RECORD FOR EACH OTHER PARTY BY MAIL/[illegible] ON: 11/1/04

Dated: November 1, 2004