Raytheon Company          617 862 6600
Executive Offices
141 Spring Street
Lexington MA 02173

# Raytheon

October 1, 1998

Mr. Dennis M. Donovan
24 Gravesleigh Terrace
Pittsfield, MA 01201

Dear Dennis:

    We are delighted to extend to you this offer of employment with Raytheon Company as Senior Vice President—Human Resources. The terms of our offer are set forth below. If these terms are acceptable, please sign and date a copy of this letter provided herewith and return it to me at your first convenience. If you accept the terms offered herein, this Agreement shall be dated as of October 1, 1998 (the "Effective Date").

1. **Employment.**

    (a)    The Company will employ you, and you agree to be employed by the Company, as Senior Vice President—Human Resources. You will report directly to, and only to, the Chief Executive Officer. You will have responsibility for, and authority over, all human resources, benefits and compensation matters for the Company. You will also have such other responsibilities, duties and authority, commensurate with your position, as may from time to time be assigned to you by the Company's Chief Executive Officer.

    (b)    You agree to devote substantially all of your full business time and energies to the business and affairs of the Company, provided, however, that nothing contained in this Paragraph 1(b) shall be deemed to prevent or limit your right to make passive investments in the securities of any entity which you do not control, directly or indirectly, and which does not compete with the Company. Notwithstanding the foregoing, you shall be permitted to make passive investments in any publicly-held business which competes with the Company, provided that your direct and indirect ownership shall not exceed 1% of the outstanding voting capital stock of such entity.

2. **Principal Location.**

    The principal location at which you will perform your duties will be the Company's offices in the metropolitan Boston area. You will maintain your principal residence in the metropolitan Boston area.

3. **Base Salary.**

    In consideration for your services under this Agreement during the Initial Employment Term and any Additional Employment Terms, you will be paid a base salary at an annual rate of

$375,000, which amount is subject to increase but may not be decreased. The term "Base Salary" shall mean the greater of $375,000 and any amount to which it has been increased by the Company.

4. **Commencement Bonus.**

In consideration for entering into this Agreement, the Company shall pay you a Commencement bonus of $500,000 ("Commencement Bonus"), payable within ten (10) days of the Commencement Date. In the event you terminate your employment without Good Reason prior to January 15, 2002, the Company may at its discretion require you to repay such amount; you shall have three (3) years from the applicable Termination Date to repay such amount.

The Termination Date in the event of your death is the date of death, and in the event of Disability the Termination Date will be the date of the Company's written notice of disability to you; provided that no such notice in the event of disability may be given until you have been substantially unable to perform your material duties hereunder for at least six (6) months, and that all obligations of the Company specified in any agreement relating to your employment shall continue in full force and effect during such six (6) month period.

In the event of your voluntary termination from the Company or your involuntary termination from the Company without Cause, the Termination Date will be the date which is 30 days from the date you provide the Company with notice of your termination or, as the case may be, 30 days from the date the Company provides you with notice. In the event of your involuntary termination from the Company with Cause, the Termination Date will be the date of your termination.

For these purposes, Good Reason shall mean any of the following:

(i) a change in the location of the principal offices of Raytheon to a location outside the metropolitan Boston area;

(ii) a material adverse change or diminution in your duties, authority, responsibilities or reporting relationship as Senior Vice President—Human Resources for the Company (including a change which results in Executive no longer directly reporting to the Chief Executive Officer of the Company) which causes your position with the Company to become of less responsibility or authority than prior to such change or diminution, provided that such change is not in connection with a termination of your employment hereunder by the Company;

(iii) the appointment of an individual other than you to serve as Senior Vice President—Human Resources (or position of similar responsibility and authority) of the Company;

(iv) a reduction in your Base Salary, a failure to pay an Annual Bonus which you have been awarded, or a material failure to pay any compensation or provide any benefit specified in this Agreement;

(v) a material breach by the Company of a material provision of this Agreement which has not been cured within thirty (30) days after written notice to you;

(vi) failure to obtain the assumption, either explicitly or by operation of law, of this Agreement or any other employment-related employment agreement between you and the Company by any successor to the Company; or

(vi) A "Change of Control".

Change of Control. A "Change of Control" means that any of the following events has occurred:

(i) any person as defined in Section 3(a)(9) of the Securities Exchange Act of 1934 Act, as amended (the "1934 Act") becomes the beneficial owner directly or indirectly of more than fifty (50%) of the outstanding Common Stock of the Company, determined in accordance with Rule 13d-3 under the 1934 Act (or any successor provision), or otherwise becomes entitled to vote more than fifty percent (50%) of the voting power entitled to be cast at elections for directors ("Voting Power") of the Company, or in any event such lower percentage as may at any time be provided for in any similar provision for any director or officer of the Company in any agreement with the Company or in any plan of the Company;

(ii) the stockholders or the Board shall have approved any consolidation or merger of the Company in which (A) the Company is not the continuing or surviving corporation or (B) pursuant to which the holders of the Company's shares of Common Stock immediately prior to such merger or consolidation would not be the holders immediately after such merger or consolidation of at least two-thirds (2/3) of the Voting Power of the Company or such higher percentage as may at any time be provided for in any similar provision for any director or officer of the Company in any agreement with the Company or in any plan of the Company;

(iii) the stockholders or the Board of Directors shall have approved any sale, lease, exchange or other transfer (in one transaction or a series of transactions) of assets of the Company constituting at least fifty percent (50%) of the Company's assets on a consolidated basis based on either the book value thereof determined in accordance with generally accepted accounting principles consistently applied as of the most recently concluded fiscal year or fair market value thereof based on a valuation by a recognized investment banking firm or other recognized third party appraiser; or

(iv) upon the election of one or more directors of the Company, a majority of the directors holding office, including the newly elected directors, were not nominated as candidates by a majority of the directors in office immediately before such election.

As used in this definition of Change of Control, "Common Stock" means the capital stock of the Company as it shall be constituted from time to time entitling the holders thereof to share generally in the distribution of all assets available for distribution to the Company's stockholders after the distribution to any holders of capital stock with preferential rights.

Cause. "Cause" means: your conviction, including a plea of nolo contendere, of a felony, which conviction has materially affected your ability to carry out your material duties pursuant to this Agreement; your willful and continued failure to substantially perform your material duties under this Agreement (or willful gross neglect resulting in such continued failure) without reasonable cause, which failure has not been cured within thirty (30) days after written notice of such alleged failure by the Company; a material breach of the confidentiality provisions of this Agreement which has a material adverse effect upon the Company's business or its employees.

5.   **Annual Bonus.**

The Company shall pay you a bonus of $375,000 for 1998 (the "1998 Bonus"), which shall be determined in accordance with normal Company procedures, but in any event no later than February 28, 1999. Thereafter, you shall be entitled to an annual bonus (the "Annual Bonus") in accordance with normal Company procedure, targeted at eighty percent (80%) of your Base Salary at the end of the calendar year for which such Annual Bonus is paid. You may in your sole discretion opt to defer both the 1998 Bonus and each subsequent Annual Bonus under the Company's nonqualified deferred compensation program offered to similarly situated senior executives of the Company in which you will be entitled to participate provided that any forfeiture or similar provision contained in any such program shall be waived by the Company and inapplicable to you.

6.   **Benefits; Reimbursement of Expenses.**

In addition to those payments set forth above, you shall be entitled to the following benefits and payments:

(a)   *Employee Benefit Plans Generally.* You shall be entitled to participate in all employee benefit plans which the Company provides or may establish from time to time for the benefit of its senior executives, including without limitation group life, medical, surgical, dental and other insurance, short and long-term disability, retirement, deferred compensation, SERP, pension, profit-sharing and similar plans.

(b)   *Health Insurance During Employment.* During your employment pursuant to this Agreement, you and your dependents wherever they may be located shall be eligible to participate in any group health, dental or similar insurance plan ("Health Insurance") offered, sponsored, or maintained by the Company, upon the same terms and conditions as such plans are offered to similarly situated senior executives of the Company.

(c)   *Post-termination Health Insurance.* Notwithstanding any provision of any Health Insurance plan to the contrary, in the event of the termination of your employment for any reason whatsoever, the Company shall provide you and your otherwise eligible dependents with Health

- 4 -

Insurance coverage the same as or substantially similar to that provided to you while you were an employee of the Company at substantially the same cost or, at your discretion, the Company shall pay to you an amount equal to the cost incurred by you for securing comparable individual health insurance coverage for yourself and your eligible dependents to the extent that such costs exceed the amount paid by you for such coverage while you were an employee of the Company, grossed up to reflect the amount of additional state or federal tax, if any, attributable to such payments to the you by the Company. The post-termination Health Insurance coverage or payments contemplated herein shall continue until, in the case of the you and your spouse, such time as each of you respectively is eligible for Medicare coverage, and, in the case of any of your otherwise eligible dependents, until such time as such dependent would otherwise lose coverage under the Health Insurance plan offered to similarly situated senior executives of the Company. At such time as you and your spouse, and each of you respectively, becomes eligible for Medicare insurance coverage, the Company shall provide to each of you retiree health or Medicare supplement insurance.

(d) *Executive Retirement Benefit.* You are entitled unconditionally to a retirement benefit (the "Executive Retirement Benefit"), with payments to begin upon the later to occur of the termination of your employment from the Company for any reason or the attainment by you of age 53. In calculating the amount of the Executive Retirement Benefit the Company will use the greater of:

(i) An amount determined by using the formula for calculating benefit amounts under the Prior Employer's Defined Benefit Retirement Program as in effect on October 1, 1998; or

(ii) An amount determined by using the formula for calculating benefit amounts under the Company's Defined Benefit Retirement Program as in effect on the date the you separate from service with the Company.

In either case, the formula for calculating the benefit shall (x) assume that your employment service with the Company includes all service with General Electric ("Prior Employer") (26 years as of October 2, 1998) and all employment with the Company, and (y) be based on your total compensation, including any annual incentive bonuses and as otherwise defined in the Company's non-qualified supplemental retirement plan.

For purposes of this section, the following terms have the following meanings: The "Prior Employer's Defined Benefit Retirement Program" refers to the formula for calculating benefits under the Prior Employer's pension plans (including tax-qualified and nonqualified plans in which the Executive participated) underlying the pension illustrations annexed hereto and incorporated herein as Attachment 1, or as such Attachment 1 may be supplemented within 60 days after the date of this Agreement. It is specifically understood, acknowledged and agreed that only the formula for determining benefits under the Prior Employer's Defined Benefit Retirement Program is to be considered in calculating benefits hereunder, and that no other provision of any plan constituting part of the Prior Employer's Defined Benefit Retirement Program which may in any way act to limit or forfeit your benefit shall be considered in calculating the Executive Retirement Benefit (e.g., no provision of the Prior Employer's Defined Benefit Retirement Program shall be used by the Company to disqualify, restrict, limit or lead to the forfeiture of the benefit contemplated herein.) The "Company's Defined Benefit Retirement

- 5 -

Program" includes any tax-qualified defined benefit pension plans, and any supplemental executive retirement plans or other non-qualified retirement benefit programs, in which senior management officers having levels of responsibility comparable to you participate.

The Executive Retirement Benefit amount payable to you from the Company shall be reduced by any amounts paid or payable to you from the Prior Employer's Defined Benefit Retirement Program (regardless of the amount calculated under (i) above). The Executive Retirement Benefit will be fully vested and nonforfeitable regardless of the time of or the reason for your termination of employment with the Company. Notwithstanding any provision of any Company Defined Benefit Retirement Program to the contrary, you shall be entitled to elect a distribution form of your choice, including, in your discretion, a 50% or 100% survivor annuity option (irrespective of whether such option is available under the Company's Defined Benefit Retirement Program or the Prior Employer's Defined Benefit Retirement Program), by submitting a written election to the Company; provided, however, that the benefit paid or payable from the Prior Employer will be offset assuming the same distribution choice as the Executive makes with respect to the Company's Defined Benefit Retirement Program. At any time prior to the commencement of benefit payments hereunder, you may change your distribution election by providing written notice to the Company.

(e) *Life Insurance.* In lieu of any split-dollar life insurance benefit customarily offered to similarly situated senior executives of the Company, effective as of the Commencement Date, the Company shall procure and maintain during the term of your employment a split-dollar life insurance policy in the amount Two Million Dollars ($2,000,000.00) on the life of the Executive, to be owned by you or the trustees of a trust for benefit of your spouse and/or dependents. You shall use reasonable efforts to fulfill all requirements necessary to obtain such insurance. Until your death, and irrespective of any termination of this Agreement or termination by you for any reason, the Company agrees to pay all premiums on such policy and shall maintain such policy, without reduction of the face amount of the coverage.

The Company shall not borrow from the cash value of the policy. After your death, or on the earlier surrender of such policy by the owner, you agree that the owner of the policy shall pay to the Company an amount equal to the premiums on such policy paid by the Company, net of (i) tax benefits, if any, to the Company in respect of payment of such premiums; (ii) any amounts otherwise payable by the Company which had been paid by or on behalf of you; (iii) dividends received by the Company in respect of such premiums, but only to the extent such dividends are not used to purchase additional insurance on your life; and (iv) any unpaid borrowings by the Company on the policy. You or the owner, as the case may be, shall execute a collateral assignment agreement to the extent necessary to secure the reimbursement obligation contemplated herein.

(f) *Relocation Expenses.* The Company shall pay all costs, with the exception of capital costs, but including without limitation all closing costs, incurred by you in (i) the disposition of your current residence in Pittsfield, Massachusetts, and (ii) the acquisition of a residence in or near Boston, Massachusetts. The Company will also pay you a tax gross up for all such expenses incurred by you and reimbursed by Company. Until you shall acquire a residence in or near Boston, but not for a period greater than six (6) months from the Commencement Date, the Company shall provide appropriate accommodations for you use in the Boston area, at a cost not to exceed $5,000 per month.

(g)  *Vacation.*  You shall be entitled to paid vacation commensurate with similarly situated senior executives of the Company, but in no event shall such vacation be less than five (5) weeks per year.

(h)  *Other Perquisites.*  You shall be entitled to all normal perquisites and benefits available to similarly situated senior executives of the Company, including but not limited to lease of an automobile in accordance with Company policy for senior executives, cellular phone allowance, and a $10,000 annual allowance for payment for preparation of your tax returns and related documents, financial counseling, estate planning and legal fees.

(i)  *Reimbursement of Expenses.*  You shall be entitled to reimbursement for all ordinary and reasonable out-of-pocket business expenses which are reasonably incurred by him in furtherance of the Company's business, in accordance with the policies adopted from time to time by the Company.

7.  **Stock Options.**

The following stock options are provided to you in addition to any other stock options provided to similarly situated senior executives of the Company, and the availability of such options shall not be limited by the provisions of any of the Company's stock option plans:

(a)  *Regular Stock Option.*  As consideration for your consent to enter into this Agreement, the Company will grant to you a stock option to purchase an aggregate of 35,000 shares of the Company's Common Stock, $.01 par value per share (the "Common Stock"). Such option shall be granted (i) in 1999 in accordance with the Company's standard option grant schedule for senior executive officers, (ii) under the Company's 1995 Stock Option Plan (the "Option Plan") and (iii) with an exercise price equal to the fair market value of the Common Stock on the date of grant. The option shall be an incentive stock option under Section 422 of the Internal Revenue Code to the extent possible in accordance with the provisions of the Code. Notwithstanding the provisions of the Option Plan, the option shall have the terms and conditions set forth on Exhibit A, the terms and conditions of which are incorporated into this Agreement and which will supersede any contrary provisions in the Option Plan.

(b)  *Replacement Stock Option.*  In anticipation of, and as consideration for, your consent to enter into this Agreement, and pursuant to the Option Plan, the Company will grant to you as of the date hereof a non-qualified stock option to purchase an aggregate of 200,000 shares of Common Stock. Notwithstanding the provisions of the Option Plan, the option shall have the terms and conditions set forth on Exhibit A, the terms and conditions of which are incorporated into this Agreement and which will supersede any contrary provisions in the Option Plan.

8.  **Restricted Unit Award.**  In anticipation of, and as consideration for, your consent to enter into this Agreement, the Company will grant to you a Restricted Unit Award (the "Restricted Unit Award") consisting of 100,000 units, with each unit representing one share of Common Stock of the Company. Notwithstanding the provisions of the 1991 Stock Plan (the "Stock Plan"), the Restricted Unit Award shall have the terms and conditions set forth on Exhibit

-7-

B attached, the terms and conditions of which are incorporated into this Agreement and which will supersede any contrary provisions in the Stock Plan.

9. **Dispute Resolution; Choice of Law.**

(a) Any dispute relating to or arising under this Agreement (with the exception of claims by Executive pursuant to the federal Age Discrimination in Employment Act) shall be resolved by binding arbitration pursuant to the procedures specified by the National Rules for the Resolution of Employment Disputes (the "Employment Arbitration Rules") established by the American Arbitration Association, effective June 1, 1997. Notwithstanding any provision of the Employment Arbitration Rules, neither party shall be entitled to discovery in the course of such arbitration. The arbitration shall take place in Boston, Massachusetts (or any other location mutually acceptable to Company and Executive), and shall be heard by a single arbitrator possessing at least ten (10) years of experience arbitrating employment disputes between employers and senior executives. The sole function of the arbitrator shall be to enforce this Severance Agreement (or any employment agreement between Executive and the Company) pursuant to its terms, and the parties explicitly agree that the arbitrator shall have no power to vary the terms of this Severance Agreement or any employment agreement between the Executive and the Company. The parties further agree that any award rendered by such arbitrator may be entered in any court with proper jurisdiction. All obligations pursuant to this Severance Agreement or any employment agreement between Executive and the Company, including all post-Termination Date payments to, and benefits provided for, Executive, shall continue in full force and effect pending a decision of the arbitrator. Each party shall pay its own arbitration costs, provided that should the Executive prevail in any arbitration action, the Company shall be liable to Executive for all attorneys' fees and costs, and shall promptly pay the same.

(b) This Agreement and the rights and obligations of the parties hereunder or thereunder shall be construed in accordance with and governed by the law of the Commonwealth of Massachusetts, without giving effect to the conflict of law principles thereof.

If the terms of this Agreement are acceptable to you please sign where indicated below. It is understood and acknowledged that a fax signature will considered to be valid as an original.

Very truly yours,

RAYTHEON COMPANY

By: _____
Daniel P. Burnham, Chief Operating Officer

Agreed to and accepted:

_____
Dennis M. Donovan

Date: 10/2/98

-8-

SEP 28 '98 23:33 FR GE CROTONVILLE X2139914  944 2139 TO 86175422241          P.10/15

*Age 53*                                Attachment 1

## GENERAL ELECTRIC PENSION PLAN
## SUMMARY OF GE BENEFITS

ESTIMATE OF MONTHLY BENEFITS FOR: DONOVAN, DENNIS M
SOCIAL SECURITY NUMBER 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       RETIREMENT DATE FEB. 2002    TYPE R-A
DATE OF BIRTH 01-01-1949                                SPOUSE'S DATE OF BIRTH 08-07-1965

THE FOLLOWING IS A SUMMARY OF YOUR ESTIMATED PENSION BENEFITS ASSUMING YOUR
RETIREMENT WILL BE EFFECTIVE ON THE ABOVE DATE. THESE SUMMARIES ARE BASED ON
YOUR DATE OF BIRTH AND THE DATE OF BIRTH OF YOUR SPOUSE.

|  | MONTHLY BENEFIT | | |
|---|---|---|---|
| DESCRIPTION | BEFORE REDUCTION FOR SURVIVOR ANNUITY | 50% SURVIVOR ANNUITY | 100% ALTERNATIVE SURVIVOR ANNUITY BEGINNING 3RD YEAR |
| GE PENSION PLAN | | | |
| CAREER ANNUITY | $ 5,752.54 | $ 5,177.29 | $ .00 |
| PERSONAL PENSION ACCOUNT ANNUITY | 531.02 | 477.92 | .00 |
| ADDITIONAL PAYMENT TO MAKE UP TO GUARANTEED | .00 | .00 | .00 |
| SUPPLEMENTAL PAYMENT TO TO AGE 62 ONLY (*) | 391.11 | 391.11 | .00 |
| TOTAL GE PENSION TRUST PAYMENTS | 6,674.67 | 6,046.32 | .00 |
| OTHER GE PENSION PLANS | 23,640.67 | 21,276.60 | .00 |
| TOTAL BENEFITS INCLUDING PERSONAL PENSION ACCOUNT ANNUITY | $ 30,315.34 | 27,322.92 | .00 |

THE ESTIMATE IN THE FIRST COLUMN HAS BEEN PREPARED TO SHOW THE MONTHLY BENEFIT
BEFORE REDUCTION FOR THE SURVIVOR BENEFIT PROVISION. UNDER THE SURVIVOR
BENEFIT, YOUR PENSION WOULD BE REDUCED BECAUSE IT MAY BE PAID FOR YOUR
LIFETIME AND YOUR SPOUSE'S LIFETIME.

*Assumptions*

- Reduced H/A effective 2/1/02
- Salary increases @ 7% per year beginning in 1999
- IC increases @ 15% per year beginning with 1998 IC

*Benefit Reduction*

$30,315.44 \times 60 = 1,818,926.40 \div 84 = 21,653.88$

DMD/
8/5/98

Attachment 1 (cont'd)
Age 55

## GENERAL ELECTRIC PENSION PLAN
## SUMMARY OF GE BENEFITS

ESTIMATE OF MONTHLY BENEFITS FOR: DONOVAN, DENNIS M
SOCIAL SECURITY NUMBER 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        RETIREMENT DATE FEB. 2004    TYPE R-A
DATE OF BIRTH 01-01-1949                  SPOUSE'S DATE OF BIRTH 08-07-1965

THE FOLLOWING IS A SUMMARY OF YOUR ESTIMATED PENSION BENEFITS ASSUMING YOUR
RETIREMENT WILL BE EFFECTIVE ON THE ABOVE DATE.  THESE SUMMARIES ARE BASED ON
YOUR DATE OF BIRTH AND THE DATE OF BIRTH OF YOUR SPOUSE.

|  | MONTHLY BENEFIT | | |
|---|---|---|---|
| DESCRIPTION | BEFORE REDUCTION FOR SURVIVOR ANNUITY | 50% SURVIVOR ANNUITY | 100% ALTERNATIVE SURVIVOR ANNUITY BEGINNING 3RD YEAR |
| **GE PENSION PLAN** | | | |
| CAREER ANNUITY | $ 6,348.10 | $ 5,713.29 | $ .00 |
| PERSONAL PENSION ACCOUNT ANNUITY | 671.96 | 604.76 | .00 |
| ADDITIONAL PAYMENT TO MAKE UP TO GUARANTEED | .00 | .00 | .00 |
| SUPPLEMENTAL PAYMENT TO TO AGE 62 ONLY (*) | 417.11 | 417.11 | .00 |
| TOTAL GE PENSION TRUST PAYMENTS | 7,437.17 | 6,735.16 | .00 |
| OTHER GE PENSION PLANS | 33,014.81 | 29,713.33 | .00 |
| TOTAL BENEFITS INCLUDING PERSONAL PENSION ACCOUNT ANNUITY | $ 40,451.98 | 36,448.49 | .00 |

THE ESTIMATE IN THE FIRST COLUMN HAS BEEN PREPARED TO SHOW THE MONTHLY BENEFIT
BEFORE REDUCTION FOR THE SURVIVOR BENEFIT PROVISION.  UNDER THE SURVIVOR
BENEFIT, YOUR PENSION WOULD BE REDUCED BECAUSE IT MAY BE PAID FOR YOUR
LIFETIME AND YOUR SPOUSE'S LIFETIME.

Assumptions

- Retirement Allowance effective 2/1/04

- Salary increases @ 7% per year beginning in 1999

- IC increases @ 15% per year beginning with 1998 IC

SEP 28 '98 23:34 FR GE CROTONVILLE X2139914  944 2139 TO 86175422241      P.14/15

Attachment 1 (cont'd)
Age 60

## GENERAL ELECTRIC PENSION PLAN
### SUMMARY OF GE BENEFITS

ESTIMATE OF MONTHLY BENEFITS FOR: DONOVAN, DENNIS M
SOCIAL SECURITY NUMBER 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          RETIREMENT DATE FEB. 2009   TYPE OPT
DATE OF BIRTH 01-01-1949                    SPOUSE'S DATE OF BIRTH 08-07-1965

THE FOLLOWING IS A SUMMARY OF YOUR ESTIMATED PENSION BENEFITS ASSUMING YOUR
RETIREMENT WILL BE EFFECTIVE ON THE ABOVE DATE. THESE SUMMARIES ARE BASED ON
YOUR DATE OF BIRTH AND THE DATE OF BIRTH OF YOUR SPOUSE.

| DESCRIPTION<br>GE PENSION PLAN | MONTHLY BENEFIT | | |
|---|---|---|---|
| | BEFORE REDUCTION FOR SURVIVOR ANNUITY | 50% SURVIVOR ANNUITY | 100% ALTERNATIVE SURVIVOR ANNUITY BEGINNING 3RD YEAR (A) |
| CAREER ANNUITY | $ 7,928.25 | $ 7,135.43 | $ 5,232.65 |
| PERSONAL PENSION ACCOUNT ANNUITY | 1,148.92 | 1,034.03 | 758.29 |
| ADDITIONAL PAYMENT TO MAKE UP TO GUARANTEED | .00 | .00 | .00 |
| SUPPLEMENTAL PAYMENT TO TO AGE 62 ONLY (*) | 482.11 | 482.11 | .00 |
| TOTAL GE PENSION TRUST PAYMENTS | 9,559.28 | 8,651.57 | 5,990.94 |
| OTHER GE PENSION PLANS | 68,494.83 | 61,645.35 | 45,206.59 |
| TOTAL BENEFITS INCLUDING PERSONAL PENSION ACCOUNT ANNUITY | $ 78,054.11 | 70,296.92 | 51,197.53 |
| TOTAL BENEFITS EXCLUDING PERSONAL PENSION ACCOUNT ANNUITY | $ 76,905.19 | 69,262.89 | 50,439.24 |

PERSONAL PENSION ACCOUNT BALANCE AVAILABLE FOR WITHDRAWAL: $ 175,180.45

THE ESTIMATE IN THE FIRST COLUMN HAS BEEN PREPARED TO SHOW THE MONTHLY BENEFIT
BEFORE REDUCTION FOR THE SURVIVOR BENEFIT PROVISION. UNDER THE SURVIVOR
BENEFIT, YOUR PENSION WOULD BE REDUCED BECAUSE IT MAY BE PAID FOR YOUR
LIFETIME AND YOUR SPOUSE'S LIFETIME.

(A) FIRST TWO YEARS SAME AS 50% SURVIVOR BENEFIT

---

Assumptions

- Optional Retirement Age 60 (2/1/09)

- Salary Increases @ 7% per year beginning in 1999

- IC Increases @ 15% per year beginning with 1998 IC

DSD 8/5/98

EXHIBIT A

**STOCK OPTIONS**

1. <u>Replacement Options.</u>

Pursuant to its 1995 Stock Option Plan (the "Plan"), as soon as possible and in any event no later than October 31, 1998, the Company will award you a non-qualified stock option to purchase 200,000 shares of the Common Stock, $.01 par value per share, of the Company at a price per share equal to the closing price of the Company's Common Stock as of the date of the agreement to which this Exhibit A is attached (the "Agreement") as reported by the New York Stock Exchange.

The following terms and conditions are applicable with respect to this option:

(a) This option shall be transferable to the extent permissible under the Plan.

(b) This option shall have a term of ten years from the date of this Agreement (the "Option Termination Date"). In the event of termination of your employment with the Company (or a parent or subsidiary of the Company) due to "Cause" (as defined in Section 4 of the Agreement) or your voluntary termination of your employment (other than as due to the events set forth below), all vested unexercised options shall terminate three (3) months following the last date of your employment by the Company and all unvested options shall terminate immediately. In all other events, including (i) your death; (ii) your Disability (as defined in Section 22(e)(3) of the Internal Revenue Code); (iii) a Change in Control of the Corporation (as defined in the Plan), (iv) termination of your employment by the Company without Cause or as a result of the nonrenewal of your Agreement, or (v) termination of your employment with the Company for a "Good Reason" as defined in Section 4 of the Agreement), all options shall terminate on the Option Termination Date.

(c) This option shall become exercisable as follows:

(1) 100,000 shares shall become exercisable one year from the date of the Agreement; and

(2) 100,000 shares shall become exercisable two years from the date of the Agreement.

Notwithstanding the foregoing, this option shall become immediately exercisable in full in the event of (i) your death, (ii) your Disability, (iii) a breach by the Company of any material provision in any agreement between you and the Company, (iv) the termination of your employment by the Company without "Cause" pursuant to Section 4 of the Agreement, (v)

EXHIBIT A

termination of your employment with the Company for a "Good Reason", or (vi) the nonrenewal of the Agreement.

2. <u>Regular Stock Options</u>.

The Company, pursuant to the Plan, has agreed to award you a stock option to purchase 35,000 shares of the Common Stock, $.01 par value per share, of the Company at a price per share equal to the closing price of the Company's Common Stock. To the extent practicable, including to the extent you exercise your option within the applicable time periods following your termination of employment, such options shall be treated as incentive stock options as defined under the Internal Revenue Code of 1986, as amended (the "Code").

3. <u>Additional Option Grants.</u>   The Company shall grant to you additional stock option grants in accordance with the Company's stock option policy as in effect from time to time.

TRADOCS: 1135585.4 (_c8104!.doc)

**Exhibit B**
**RESTRICTED UNIT AWARD**

Pursuant to the agreement to which this is attached (the "Agreement"), as soon as possible and in any event no later than October 31, 1998, the Company will award you a Restricted Unit Award consisting of One Hundred Thousand (100,000) units, with each unit representing one share of Common Stock of the Corporation under the Corporation's 1991 Stock Plan ("the Plan"), as follows:

1.  If you are continuously employed by the Company or one of its subsidiaries from the date of grant of this Restricted Unit Award through the dates listed below (each a "Vesting Date"), then on each such Vesting Date the Holder shall be vested with the right to receive the number of units set forth opposite such Vesting Date and such right shall not thereafter be subject to forfeiture for any reason. No payment (other than in connection with withholding tax obligations) shall be required from the Holder in connection with this Restricted Unit Award.

| Date | Number of Units |
|---|---|
| November 1, 1999 | 20,000 |
| April 1, 2000 | 20,000 |
| October 1, 2008 | 60,000 |

2.  Notwithstanding the provisions of Section 1 above, your right to receive the number of units set forth opposite such Vesting Date shall be fully vested and not thereafter subject to forfeiture for any reason upon the occurrence of one or more of the following events: (i) your death; (ii) your disability (as defined in Section 22(e)(3) of the Internal Revenue Code (the "Code"); (iii) a Change in Control of the Corporation (as defined in the 1991 Stock Plan), or (iv) termination of your employment with the Company for any reason (including, but not limited to, termination of employment by the Holder for a "Good Reason" as defined in Section 4 of the Agreement) other than (a) "Cause" (as defined in Section 4 of the Agreement) or (b) voluntary termination by the Holder of his employment with the Company, other than for Good Reason.

3.  The settlement with respect to all units covered by this Restricted Unit Award is to be made under the terms of the Plan as of the Settlement Date.

The "Settlement Date" shall be determined by you on or prior to the date which is four (4) months prior to the applicable Vesting Date (as determined in Section 1 or Section 2 hereof), and shall be either (i) the Vesting Date or (ii) that date chosen at the time of termination of employment which is within one year following the your last day worked designated as the Settlement Date by you in writing to the Corporation, provided that such date may not be earlier than the date such notice is delivered to the Corporation. If you fail to designate a Settlement Date, the Settlement Date shall be the first anniversary of the your last day of work. In the event that the Settlement Date falls on a day that is not a NYSE trading day, the Settlement Date shall be the next preceding NYSE trading day.