UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DENNIS M. DONOVAN </br></br> Plaintiff, </br></br> v. </br></br> MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C., ROBERT M. GAULT, individually, and PETER J. MARATHAS, JR., individually, </br></br> Defendants. | Civil Action No. 04-12110-MLW |

**REPLY MEMORANDUM IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS**

In his Memorandum in Opposition to Defendants' Motion to Dismiss the Complaint ("Opposition"), plaintiff Dennis Donovan ("Donovan") has identified only two facts to support his claim for legal malpractice. One of the facts cited by Donovan is demonstrably untrue and the second is immaterial. Moreover, despite amending the Complaint under Fed. R. Civ. P. 15(a), Donovan still has failed to plead causation adequately. Thus, this case remains ripe for adjudication and, pursuant to Rule 12(b)(6), the Amended Complaint should be dismissed.[1]

A.  *Donovan Agrees with the Defendants' Statement of Facts.*

In the Opposition Donovan does not dispute any of the material facts set out by the defendants in their Memorandum in Support of Defendants' Motion to Dismiss ("Defendants' Memorandum"). Donovan admits, either explicitly or *sub silentio*, that the Second Amendment

---

[1] Aside from the allegations concerning causation, the Amended Complaint is substantively identical to the original Complaint. As a result, the defendants and Donovan have agreed that, together with this reply, the defendants' Motion to Dismiss and the memorandum in support filed therewith shall apply to the Amended Complaint.

and other documents referenced in and attached to Defendants' Memorandum are authentic and that the defendants have accurately quoted from those documents. Opposition at 3. He thus concedes that the Court may take those documents into account in ruling on the Motion to Dismiss without transforming it into a motion for summary judgment. *See, e.g., Watterson v. Page,* 987 F.2d 1, 3-4 (1st Cir. 1993).

Donovan also admits that the Second Amendment was signed by Daniel Burnham ("Burnham") as Chief Executive Officer of Raytheon Company ("Raytheon"). Opposition at 3, 6, 7. While Donovan is careful to avoid discussing the point, he does not dispute – because he cannot dispute – that Burnham also was Chairman of Raytheon's Board of Directors when he signed the Second Amendment. Burnham's title as Chairman and CEO is contained on the letterhead of the Second Amendment and immediately under the signature line on page 6 of the document. Ex. 4 at 1, 6.[2]

It also is undisputed that in his capacity as Chairman of the Board and CEO of Raytheon Burnham made two separate and distinct representations. The first concerns the approvals that were obtained. On page 1 of the Second Amendment Burnham represented to Donovan and to the defendants that the Second Amendment "received the required reviews and approvals of the Company's Board of Directors and its Management Development and Compensation Committee" ("MDCC"). *Id.* at 1. Burnham further affirmed, just above the signature line on page 6 of the Second Amendment, that "all necessary approvals of any board, committee, body, or other person have been obtained" and that "this Amendment to your Employment Agreement shall constitute a binding agreement upon execution by both parties." *Id.,* ¶ 6. The second representation concerns Burnham's authority. On this point Burnham informed Donovan and the

---

[2] Except as otherwise noted, the exhibits referenced herein refer to those filed with Defendants' Memorandum.

defendants in the Second Amendment "that he [was] duly authorized to execute this Amendment on behalf of the Company." *Id.*

These key affirmations, indeed guarantees, are carefully ignored by Donovan in his Opposition. Nonetheless, they invite the simple question of whether, as a matter of law, a fact finder reasonably could find that the defendants committed malpractice when they relied on the express representations made by Raytheon's Chairman and CEO that the Second Amendment had been approved by the MDCC and the Board of Directors and that he was authorized to sign it? The defendants submit that it could not.

B. The Two Facts on Which Donovan Relies Fail to State a Claim upon Which Relief Can be Granted.

Donovan begins his argument by contending that, in reviewing a motion to dismiss, "the allegations in the complaint must be taken as true." Opposition at 4. This is incorrect. *See American Tel. & Tel. Co. v. IMR Capital Corp.*, 888 F. Supp. 221, 251 (D. Mass. 1995) (the standard of review for a motion to dismiss "does not mean . . . that a court must (or should) accept every allegation made by the complainant . . .") (*quoting United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992)). Instead, the Court is required to accept as true only "well-pleaded *factual* averments," not unsubstantiated conclusions or subjective characterizations. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988) (emphasis added) (*quoting Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir.), *cert. denied*, 483 U.S. 1021 (1987)).

In the Opposition Donovan identifies only two *facts* (as opposed to conclusory allegations) which arguably could give rise to a claim for legal malpractice. First, quoting from paragraph 12 of the Amended Complaint, Donovan contends the defendants "did not ascertain whether the officer of Raytheon who signed the Second Amendment [Burnham] had the authority to do so and did not obtain verification" that the Board or MDCC had reviewed and

approved the Second Amendment. Opposition at 5. This allegation, however, is directly contradicted by the (now undisputed) Second Amendment. In the Second Amendment Burnham expressly represented that "all necessary approvals of any board, committee, body, or other person have been obtained," and specifically that the amendment had "received the required reviews and approvals" of the Board and the MDCC. Ex. 4 at 1, ¶ 6. Burnham also expressly represented to Donovan and the defendants in the Second Amendment that he was "duly authorized" to sign it. Ex. 4, ¶ 6. These representations, secured by the defendants from Raytheon's highest ranking director and officer, are precisely the verifications of approval and authority Donovan alleges were not obtained. As a matter of law, therefore, Donovan's claim that the defendants did not obtain such verifications cannot be accepted as true or save the Amended Complaint from being dismissed. *Clorox Co. of Puerto Rico v. Procter & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000) (when a document contradicts allegations in the complaint, the document "trumps" the allegations); *Gooley*, 851 F.2d at 514 (court must not accept as true alleged facts which are "conclusively contradicted by [plaintiff's] concessions or otherwise . . . .") (*quoting Chongris*, 811 F.2d at 37).

The second fact alleged by Donovan is that the defendants "did not obtain a copy of the minutes of the MDCC or Board meetings to confirm that the Second Amendment was properly approved." Opposition at 5 (quoting Amended Complaint, ¶ 12). When viewed against the backdrop of the undisputed facts here, however, no reasonable attorney would have been expected to obtain the MDCC or Board minutes. As a matter of law, therefore, this allegation cannot give rise to a claim that the defendants failed to exercise reasonable care.[3] *See, e.g.,*

---

[3] Donovan concedes that the exercise of reasonable care applies to the claims for negligence, breach of contract, G.L. c. 93A and negligent misrepresentation, but contends that the standard does not apply to the claim for equitable estoppel. Opposition at 6 n.1. In this respect he may have misunderstood the defendants' point. As explained in Defendants' Memorandum at 8 n.6, to assert a claim for equitable estoppel Donovan must allege that *the defendants*

*Magarian v. Hawkins*, 321 F.3d 235, 238 (1st Cir. 2003) (judge may resolve question of negligence "where the evidence and reasonable inferences drawn therefrom lead to but one reasoned conclusion."); *Gaines v. Gen. Motors Corp.*, 789 F. Supp. 38, 41 (D. Mass. 1991) ("where no rational view of the evidence would warrant a finding of negligence," judge may decide issue as a matter of law) (*quoting Glick v. Prince Italian Foods of Saugus, Inc.*, 25 Mass. App. Ct. 901, 902 (1987)); *Goulart v. Canton Hous. Auth.*, 57 Mass. App. Ct. 440 (2003) (same).

Here a rational view of the undisputed facts leads to but one "reasoned conclusion." Burnham was, unquestionably, the highest corporate authority to whom the defendants possibly could have looked for an affirmation that the MDCC and/or Board of Directors had approved the Second Amendment. Not even Donovan can deny that securing the personal representation of the Chairman of the Board was an extraordinary measure. As Chairman of the ultimate governing board of Raytheon, Burnham was Raytheon's designated representative, the individual selected by the Board to communicate its decisions to the company's employees (including Donovan), the business community and the rest of the world. There was, quite literally, no one else at Raytheon who possessed, or who appeared to possess, greater knowledge about, and authority concerning, the company's affairs. In short, there was no one else at the company with greater authority to represent what the Board of Directors, or any board or committee

---

made a "definite misrepresentation of fact" to him. *Mimya Hosp., Inc. SNF v. United States Dep't of Health & Human Servs.*, 331 F.3d 178, 182 (1st Cir. 2003) (*quoting Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 59 (1984)). Here, however, the defendants did not misrepresent any facts to Donovan. Instead, it was Burnham and Thomas Hyde, Raytheon's General Counsel, who misrepresented that the Second Amendment had been approved by the Board and that it was binding on the company. Thus, Donovan's claim of equitable estoppel should be dismissed for this reason alone. In addition, it should be noted that the only representation attributed to the defendants by Donovan is that "they would make every effort to ensure the amendment's enforceability." Opposition at 2-3; *see also* Amended Complaint, ¶ 11. Assuming *arguendo* such a statement was made, at most it constituted the defendants' judgment or opinion which is not actionable. *See, e.g., Rodowicz v. Massachusetts Mut. Life Ins. Co.*, 192 F.3d 162, 175 (1st Cir. 1999) (statements of opinion, judgment, expectation or estimate cannot give rise to a claim for misrepresentation) (*citing Powell v. Rasmussen*, 355 Mass. 117, 118 (1969)); *Zimmerman v. Kent*, 31 Mass. App. Ct. 72, 77 (1991). Further, as explained in Defendants' Memorandum and herein, the defendants did, in fact, make every reasonable effort to ensure the Second Amendment was enforceable. The claim for equitable estoppel, therefore, should be dismissed for these reasons as well.

subordinate to it, had done. This alone is dispositive of the issue before the Court.[4] *See* cases cited in Defendants' Memorandum at 12-13.

Further, in signing the Second Amendment, Burnham was exposing himself to personal liability if the representations of approval and authority in the amendment were later found to be untrue. *Henry W. Savage, Inc. v. Friedberg*, 322 Mass. 321, 324 (1948); Restatement (Second) of Agency § 330 (1958). From the vantage of a reasonable lawyer, it is inconceivable that the Chairman of a Fortune 100 company would take on such potential liability unless the MDCC or Board had approved the Second Amendment and he was authorized to sign it.[5]

The reasonableness of the defendants' reliance on Burnham's representations is buttressed by their earlier dealings with him. It is undisputed that Burnham signed Donovan's original employment and severance agreements on behalf of Raytheon in 1998. Exs. 1, 2. At that time Burnham was the company's Chief Operating Officer. When he signed those agreements Burnham represented – as he did in the Second Amendment – that he was "duly authorized to execute [them]" and that "all necessary approvals of any board, committee, body, or other person have been obtained." Ex. 2 at ¶ 14; Ex. 3 at 2, ¶ k. The validity and binding effect of the original employment and severance agreements has never been questioned. Clearly, if Burnham was authorized to sign Donovan's employment agreement as COO, it was reasonable

---

[4] Donovan never once mentions in the Opposition that Burnham was Chairman of Raytheon's Board of Directors; instead, he consistently refers to Burnham only as CEO. Donovan employs this tactic because he cannot dispute or deny that Burnham was the highest ranking Board member who, at a minimum, appeared to speak and act on behalf of Raytheon when he represented to Donovan and the defendants that the Second Amendment had been approved and that he was authorized to sign it.

[5] Contrary to Donovan's contention (Opposition at 6), Raytheon's by-laws only further prove that Burnham appeared to possess the authority to enter into the Second Amendment on Raytheon's behalf. In part, the by-laws stated: "The Chairman of the Board . . . shall see that all orders and resolutions of the Board are carried into effect" and, subject to general or specific authority delegated by the Board, "[t]he Chairman . . . may execute . . . contracts . . . for and on behalf of the Corporation." Ex. 7, §§ 4.3, 7.1. Burnham's representations that the Board had approved and delegated to him the authority to execute the Second Amendment were completely in accord with the quoted provisions of the by-laws; as such, Burnham's apparent authority was all the more stronger.

for the defendants to believe that Burnham was authorized to sign an amendment to that agreement two years later as Chairman of the Board and CEO.

Donovan's argument that the defendants should have obtained MDCC or Board minutes is unfounded for another reason. Minutes of a corporate board or committee meeting are simply one person's written representation that the events and activities described in the minutes took place. The person signing the minutes (usually the corporate secretary) obviously is subordinate to the Chairman and, frequently, is less directly informed about what transpired since executive compensation matters (like the Second Amendment) and many other issues are discussed in executive session. As a result, such minutes usually are a second- or third-hand account of the events that supposedly took place. They do not, therefore, provide any greater assurance that a particular action occurred than does a written representation from the company's Chairman or CEO, who in this case was a first-hand participant in and observer to the underlying event.

Ironically, Raytheon's corporate secretary on the effective date of the Second Amendment in January, 2000, was Thomas Hyde, the Company's General Counsel. *See* Raytheon's 2000 Form 10-K, attached hereto as Exhibit A; and the biography for John Kapples from Raytheon's web site, attached hereto as Exhibit B. And it was Hyde who, in countersigning a letter written by defendant Gault in connection with Donovan's resignation in March, 2001, "CONFIRMED AND AGREED" on behalf of Raytheon that the Second Amendment was binding and that Donovan would receive the benefits under it. Ex. 6. In a very real sense, therefore, Donovan received precisely the assurance he now claims the defendants should have obtained. Moreover, inasmuch as Hyde understood the Second Amendment had been approved by the Board at a time when he was corporate secretary, it certainly was reasonable for the defendants to believe the same.

Finally, Donovan alleges that the Motion to Dismiss should be denied because expert testimony generally is necessary to establish attorney malpractice. Opposition at 6. The operative word is "generally." Expert testimony is not necessary where, as here, common knowledge, experience and/or the undisputed facts indicate that reasonable care has been exercised. *Magarian*, 321 F.3d at 238; *Gaines*, 789 F. Supp. at 41; *see also Peckham v. Cont'l Cas. Ins. Co.*, 895 F.2d 830, 837 (1st Cir. 1990) ("That [reasonableness] is *ordinarily* a fact question does not make it *invariably* a fact question") (emphasis in original). Inasmuch as the defendants' conduct, in light of the situation as a whole, demonstrates that they exercised due care, expert testimony is unnecessary and should not be used as a life-support system to keep the Amended Complaint alive. *Bobick v. United States Fid. and Guar. Co.*, 439 Mass. 652, 661-62 (2003) (reasonableness of insurer's conduct "is to be considered in light of the situation as a whole"); *Schrottman v. Barnicle*, 386 Mass. 627, 642 (1982) (expert testimony unnecessary to prove negligence in certain circumstances).

B. <u>Donovan Still Has Not Pleaded Causation Adequately.</u>

Donovan contends that his earlier failure to plead causation adequately "is moot" because of the Amended Complaint he has filed. Opposition at 8. Here too he is wrong.

As explained in Defendants' Memorandum, proof of proximate cause cannot rest on speculation and conjecture. *Jorgensen v. Massachusetts Port Auth.*, 905 F.2d 515, 524 (1st Cir. 1990) (citations omitted). It is not sufficient for Donovan simply to allege that he *possibly* would have received the disputed employment benefits; he must instead plead facts that establish that he would have received, or at least probably would have received, such benefits. *Id.* (*citing Berardi v. Menicks*, 340 Mass. 396, 402 (1960)); *Wehringer v. Powers & Hall*, 874 F. Supp. 425, 427 (D. Mass. 1995), *aff'd*, 65 F.3d 160 (1st Cir. 1995).

In the Opposition Donovan alleges two sets of facts in support of the element of causation. In paragraph 13 of the Amended Complaint Donovan asserts that had he been aware the Second Amendment "was not properly approved, he would have taken steps to secure its approval and, upon information and belief, would have obtained proper approval for the Second Amendment." "If approval was not obtained," Donovan alleges, he "would have accepted an employment offer from General Electric, which would have provided him with additional benefits." Amended Complaint, ¶ 13. The failings with these allegations are manifest.

First, the assertion that Donovan would have obtained Raytheon's proper approval for the Second Amendment cannot be accepted as true because it is contradicted by the public record. While ignored by Donovan, in an earlier case before this Court, Raytheon filed a declaratory judgment action against Donovan to avoid providing him the benefits contained in the Second Amendment. *See Raytheon Co. v. Donovan*, Civ. Action No. 02-10909-MLW (D. Mass. May 17, 2002). It is ludicrous to think that the very Board that directed that Donovan be sued to prevent him from receiving the benefits in the Second Amendment would have approved the Second Amendment based on unspecified steps Donovan alleges he would have taken. Further, Donovan's contention that he would have taken a job with GE "[i]f approval was not obtained" means that Donovan himself regarded the Board's approval of the Second Amendment only as a possibility, which places it squarely in the realm of speculation and conjecture.

Donovan's assertions that GE and, in paragraph 17 of the Amended Complaint, Home Depot (his current employer) would have provided him with additional benefits also cannot be credited because they are conclusory and speculative. Nowhere in the Amended Complaint does Donovan plead any of the facts concerning the alleged job offer from GE or why, if Home Depot supposedly would have provided the benefits in 2001, it has not provided them now. By failing

to plead such facts or explain these inconsistencies, Donovan's allegations regarding the unspecified benefits he would have received from GE or Home Depot are bald assertions that should not be credited. *Resolution Trust Corp. v. Driscoll*, 985 F.2d 44, 48 (D. Mass. 1993) (assumption that factual allegations are true does not extend to "bald assertions") (*quoting Chongris*, 811 F.2d at 37); *Borden v. Betty Gibson Associates, Inc.*, 31 Mass. App. Ct. 51, 54-55 (1991) (recovery cannot be based on conjecture and speculation as to causation).

Donovan's final contention is that even had he "remained at Raytheon without the benefits in the Second Amendment, he would have eventually received additional benefits under his original employment agreement." Amended Complaint, ¶ 17. Maybe so, but that does not mean that the defendants' conduct caused Donovan to be damaged. As a matter of law, the defendants caused a legally cognizable injury to Donovan only if the amount Donovan would have earned under the balance of the term of his original employment agreement with Raytheon (April, 2001-January 15, 2002; *see* Ex. 2, ¶ 1) is less than the amount he earned from Home Depot during the same period. *See, e.g., Air Safety, Inc. v. Roman Catholic Archbishop of Boston*, 94 F.3d 1, 5 (1st Cir. 1996) (compensation for breach of contract and negligent performance of a contractual obligation is limited to making the party whole); *Kattar v. Demoulas*, 433 Mass. 1, 15 (2000) (fundamental principle on which rule of damages is based is making the injured party whole). Significantly, Donovan does not assert that he earned less at Home Depot than he would have earned at Raytheon. This is because, as evidenced by the proxy statement for Home Depot attached as Exhibit 5 to Defendants' Memorandum, Donovan's compensation at Home Depot for the relevant period vastly exceeded what Donovan would have earned under his original employment agreement at Raytheon.[6] As a result, Donovan still has

---

[6] For example, Donovan's base salary at Raytheon was $375,000 per year. At Home Depot his base salary was $444,230 for 2001 and $579,808 for 2002. At Raytheon, Donovan's bonus for 2001 and 2002 was to be at least

not pleaded that the defendants' alleged negligence caused him any injury. *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990) (affirming this Court's dismissal of the complaint because the plaintiff failed to plead any causal relationship between the defendant's alleged actions and any injury); *Colonial at Lynnfield, Inc. v. Sloan*, 870 F.2d 761, 765-66 (1st Cir. 1989) (no damages awarded where appellee financially benefited from alleged breach); *Poly v. Moylan*, 423 Mass. 141, 148 (1996), *cert. denied*, 519 U.S. 1114 (1997) (plaintiff in a legal malpractice action must show that but for the lawyer's negligence he would have benefited financially).

## CONCLUSION

For these reasons, the defendants request that the Court dismiss the Amended Complaint.

Respectfully submitted,

MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.,
ROBERT M. GAULT, and
PETER J. MARATHAS, JR.,

By their attorneys,

_____
Robert S. Frank, Jr. (BBO No. 177240)
Kevin P. Light (BBO No. 300110)
Paul D. Popeo (BBO No. 567727)
CHOATE, HALL & STEWART
Exchange Place
53 State Street
Boston, MA 02109
(617) 248-5000

Dated: November 19, 2004

I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED UPON THE ATTORNEY OF RECORD FOR EACH OTHER PARTY BY MAIL/▇▇▇ ON DATE 11/19/04 SIGNATURE _____

---

$300,000. At Home Depot Donovan received a bonus of $1,005,795 in 2001 and $420,000 in 2002. Finally, the value of the "other compensation" and restricted stock Donovan received from Home Depot in 2001 and 2002 totaled $22,142,814 – eclipsing the restricted stock, options and other benefits Donovan was to receive from Raytheon. *See* Exs. 1, 5.